On January 31st, 1938, this court filed an opinion in the above matter, which is reported in 123 N.J. Eq. 133. Since the filing of that opinion, counsel for the defendants Oswald and Emmy Rothman, in a re-argument of the case, directed attention to the fact that the opinion failed to mention any consideration of the allegations in paragraphs 5 and 6 of the said defendants' counter-claim, which read as follows:
Paragraph 5: "At the time of executing and delivering the said mortgage by these answering defendants-counter-claimants, the land and premises securing the payment of the bond referred to in said bill of complaint were of a market value far in excess of the debt due on said bond, and *Page 129 
remained, and were of a market value in excess of the debt due on February 9th, 1931, or the due date of the said debt according to said bond and mortgage."
Paragraph 6: "After the said February 9th, 1931, and at the time of filing complainants' bill of foreclosure, the said land and premises greatly deteriorated and depreciated in value, and have become encumbered by defaulted payments of taxes and interest as in the said bill of complaint alleged; and through default and neglect of complainants to enforce the terms and conditions of the said mortgage on the part of the said Daniel M. Dexheimer and Mary Dexheimer, his wife, to the end that the said land and premises now have become inadequate security for the payment of the amount due to the complainants."
Counsel's observation was proper and timely. The omission of said paragraphs 5 and 6 was an oversight on the part of the court. The opinion determined that the interest of the Dexheimers in the property was a mere equity of redemption, and that they purchased the property subject to the complainants' mortgage. It further determined, that the due date of the mortgage was extended by the mortgagees without the consent of the mortgagors, and that at the time of the extension, the mortgagees had no knowledge that the Dexheimers had assumed the payment of the mortgage.
At the hearing, counsel for the complainants conceded that if the Rothman defendants were entitled to exoneration, they were entitled to complete exoneration.
The question of exoneration was considered by Vice-Chancellor Lewis in the case of Reeves v. Cordes, 108 N.J. Eq. 469,
wherein he, among other things, said:
"I do not here decide, nor is it to be understood from anything that I have heretofore said, that a mortgagor, so situated and circumstanced as is complainant, is entitled to be exonerated only to the extent of the price which the mortgaged premises bring at the foreclosure sale. On the contrary, the true rule is that such a mortgagor is entitled to exoneration to the extent of the value of the property at the time originally fixed for payment by the mortgage. And in *Page 130 
those cases where it is shown that the value of the property had depreciated between that date and the time of the foreclosure, I am of the opinion that such mortgagor would be entitled to a credit for the amount of such depreciation, in addition to the price realized on foreclosure, by way of exoneration on his bond."
Exoneration was denied in that cited case because the bill failed to allege depreciation; and this appears clearly by what Vice-Chancellor Lewis says:
"But complainant's amended bill cannot be sustained under or upon even the principles last above referred to. It is devoid of even a single allegation that the properties, or either of them, depreciated in value between the original due dates of the mortgages and the time of the commencement of the foreclosure proceedings. In such a situation this court will not assume that the property had depreciated in value after the original due date of the mortgage, the legal presumption being to the contrary. For the reasons indicated, I am fully satisfied that complainant's bill, as amended, lacks equity, fails to disclose a legal or equitable cause of action, and, therefore, should be struck out, and that the order to show cause should be discharged and the adinterim restraint therein imposed vacated, and such will be the order."
In the case of Prudential Insurance Company of America v.Rosenthal, 109 N.J. Eq. 386, Vice-Chancellor Buchanan in referring to Reeves v. Cordes, says:
"The court there held that there had been no assumption of payment of the mortgage debt by the subsequent grantee, and hence the grantee had not become the primary debtor and the mortgagor the surety, as to the entire mortgage debt; that the mortgaged premises were the primary fund for the payment of the mortgage debt and the mortgagor was to be considered as surety only in so far as concerned the value of the mortgaged premises; therefore even if the mortgagee's agreement to extend payment entitled the mortgagor to exoneration, such exoneration could not go beyond the value of the mortgaged premises; that as to the difference between the value and the amount of the mortgage debt, the mortgagor *Page 131 
was and had always been the primary or principal debtor, and was still liable.
"The court then goes on to say that the mortgagor `so situated and circumstanced' as the then complainant, is entitled to exoneration to the extent of the value of the mortgaged premises at the time originally fixed for the payment of the mortgage."
Referring to the effect of an extension agreement, Vice-Chancellor Buchanan further says:
"There is in the present case no allegation that the mortgagee made any valid agreement with any subsequent grantee for the extension of the time of payment of the mortgage debt. It is the making of such agreement — the modification of the terms of the primary contract for the performance of which the surety became surety — which entitled the surety to exoneration, or discharge."
It is apparent that the right of exoneration arises where (1) the mortgagee extends the time of payment of the mortgage debt by agreement between the mortgagee and the grantee of the mortgaged premises with notice and knowledge by the mortgagee of the conveyance of the mortgaged premises to, and the assumption of the mortgage debt by, the grantee; and (2) where the mortgagee without consent of the mortgagor extends for a vendee or grantee, the term of the mortgage, and the property depreciates in value after the original due date and during the extended time.
The loss sustained by the mortgagor through the act of the mortgagee in depriving the mortgagor of the full value of his security upon the bond, is the amount of the exoneration. InGorenberg v. Hunt, 107 N.J. Eq. 582, the court of errors and appeals, in affirming the opinion of Vice-Chancellor Bigelow, sustains the rule that the land is the primary fund for the payment of the debt, and that the extension of the mortgage after the premises are sold releases the mortgagor to the extent that the premises depreciated in value after the original due date of the mortgage. In his opinion filed in this last mentioned case, Vice-Chancellor Bigelow said: *Page 132 
"The instant case is not within that rule since the bill of complaint does not allege that the land depreciated in value between the original maturity of the mortgage and the time that foreclosure was begun."
In the instant case, the depreciation of the value of the land is pleaded and admitted; consequently, the Rothmans' application for relief under their counter-claim in which they allege they were "entitled to exoneration to the extent of the depreciation in value of the property at the time originally fixed for payment by the mortgage," is merited under the established principles of equity. Reeves v. Cordes, supra. See, also, Usbe Buildingand Loan Association v. Ocean Pier Realty Corp., 112 N.J. Eq. 580
(at p. 582), where Vice-Chancellor Backes said:
"Limited exoneration, as indicated in Reeves v. Cordes,108 N.J. Eq. 469, and Prudential Insurance Co. v. Rosenthal,109 N.J. Eq. 386, is not pleaded, and, whether maintainable, is not considered."
It may be stated that under the said extension agreement (Exhibit D-2), the Dexheimers covenanted to pay the original debt in the event of any default. By reason of that covenant the complainants obtained a default judgment in the New Jersey supreme court against the Dexheimers.
I feel that my findings as expressed in my previous opinion, reported in 123 N.J. Eq. 133, should be modified and amended. A decree sustaining the Rothmans' claim for exoneration will be advised. *Page 133